**ORIGINAL**

# In the United States Court of Federal Claims

No. 12-773 C
Filed: June 25, 2013

**FILED**
JUN 25 2013
U.S. COURT OF FEDERAL CLAIMS

*******************************************
\*
MERLE RICHARD SCHMIDT,                     \*
\*
    Plaintiff, *pro se*,                  \*
\*
v.                                         \*
\*
THE UNITED STATES,                         \*
\*
    Defendant.                            \*
\*
*******************************************

Jurisdiction;
Motion to Dismiss, RCFC 12(b)(1);
*Pro Se*;
U.S. CONST. amends. I, VII, IX.

**Merle Richard Schmidt,** Deep River, Iowa, Plaintiff, *pro se*.

**Gregory Daniel Page,** United States Department of Justice, Environment and Natural Resources Division, Natural Resources Section, Washington, D.C., Counsel for the Government.

## MEMORANDUM OPINION AND FINAL JUDGMENT

**Braden,** *Judge*.

### I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY.

On November 13, 2012, Merle Richard Schmidt ("Plaintiff") filed a Complaint ("Compl.") in the United States Court of Federal Claims seeking a declaratory judgment that he is the owner of a certain plot of land located in Iowa. Compl. ¶¶ V.2-3. The Complaint alleges that Plaintiff is entitled to this land, because he is the trustee of River Valley Family Trust ("Trust"), but "was subjected to armed ouster from the land" for "non-derivative color of title sold in fraud at tax sale." Compl. ¶¶ IV.16, 23-24. The Complaint further alleges that the Iowa County Sheriff was scheduled to serve as magistrate to adjudicate this issue, but failed to appear at the proceeding. Compl. ¶¶ IV.16, 27-28. The Complaint also alleges that "[t]he people did on their own volition" convene a jury and found that title to the land belonged to the Trust. Compl. ¶¶ IV.29-30. The Complaint further alleges that Plaintiff sought to have the Sheriff enforce this determination, but was prevented from doing so by the intervention of Iowa County's Attorney. Compl. ¶ IV.34. Plaintiff next attempted to enforce his claim in the United States District Court for the Northern District of Iowa, by filing an Action of Ejectment, but that court "hi-jack[ed] and abrogate[d]" that effort. Compl. ¶¶ IV.35-36. Consequently, the November 13, 2012 Complaint alleges that the United States District Court's action violated the Seventh Amendment

of the United States Constitution and that Plaintiff is entitled to possession of the land. Compl. ¶ V.3.

The November 13, 2012 Complaint also alleges that Plaintiff is the owner of a land patent, through which the Government is obligated under contract to afford Plaintiff possession of the land. Compl. ¶¶ I.2, V.2. The alleged actions of the United States District Court for the Northern District of Iowa, and the State of Iowa, had the effect of impairing the obligation of this contract in contravention of the United States Constitution. Compl. ¶¶ I.1, IV.40. Plaintiff is entitled to declaratory judgment of entitlement to the land at issue, because a patent is the highest form of title. Compl. ¶ V.2.

Along with his November 13, 2012 Complaint, Plaintiff submitted Exhibit A, containing an "Affidavit of Claim against the United States," and two letters addressed to the United States President and Attorney General. In addition, Plaintiff provided Exhibits 1 and 2, Abstracts of Title for the land in question.

The court granted the Government's December 11, 2012 and February 6, 2013 Motions For Enlargement Of Time, because of the Government's difficulty in finding and communicating with the Plaintiff. On February 25, 2013 the Government filed a Motion To Dismiss ("Gov't Mot."), arguing lack of subject matter jurisdiction and, alternatively, failure to state a claim for relief, pursuant to RCFC 12(b)(1) and 12(b)(6), respectively. On March 25, 2013, Plaintiff submitted a Cross Motion In Response To Defendant's Motion To Dismiss Under RCFC 12(b)(1) And 12(b)(6) ("Pl. Resp."). On April 25, 2013 the Government filed a Consolidated Opposition to Plaintiff's Cross-Motion And Reply In Support Of Defendant's Motion To Dismiss ("Gov't Reply"), to which Plaintiff replied on May 6, 2013 ("Pl. Reply").

## II. DISCUSSION.

### A. Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

Therefore, to pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) ("The Tucker Act . . . does not create a substantive cause of action; . . . a

2

plaintiff must identify a separate source of substantive law that creates the right to money damages" (i.e., the source must be 'money-mandating')). Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can be fairly interpreted as mandating compensation by the Federal Government." *United States v. Mitchell*, 463 U.S. 206, 216 (1983). And, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

### B. Standard Of Review For *Pro Se* Litigants.

The pleadings of a *pro se* plaintiff are held to a less stringent standard than those of litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers"). It has been the tradition of this court to examine the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

### C. Standard Of Review For A Motion To Dismiss Pursuant To RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations of the complaint to be true and to draw all reasonable inferences in plaintiff's favor." *Henke*, 60 F.3d at 797.

### D. The Government's February 25, 2013 Motion To Dismiss.

#### 1. The Government's Argument.

The November 13, 2012 Complaint does not make allegations sufficient to establish subject matter jurisdiction. Gov't Mot. at 1. Specifically, the Complaint cites no constitutional provision, federal law, or contract that provides Plaintiff with a substantive right to money damages. Gov't Mot. at 7. Article I, Section 10 of the Constitution prohibits state action, not federal action. Gov't Mot. at 7. Likewise, the Ninth Amendment to the Constitution does not establish a right to money damages. Gov't Mot. at 7-8. Nor is the Government a party to any alleged contracts or land patents. Gov't Mot. at 8. Plaintiff's exhibits show only that the United States conveyed the land at issue to private parties in either 1879 or 1913, and never reacquired it. Gov't Mot. at 8-9. In addition, it appears that Plaintiff acquired all the land at issue from

3

private parties, not the United States, either through probate or other transactions. Gov't Mot. at 9-10. Moreover, the land at issue is now occupied by a private party, through a purchase at a tax sale to which the United States was not a party. Gov't Mot. at 11. As such, the November 13, 2012 Complaint should be dismissed.

Plaintiff's March 25, 2013 Cross Motion raises a takings claim not alleged in the November 13, 2012 Complaint. The Government replies that the March 25, 2013 Cross Motion fails to allege that the land was "occupied or otherwise harmed by the authorized actions of federal employees, federal agencies, or federal instrumentalities." Gov't Reply at 4-5. Neither the November 13, 2012 Complaint, nor the March 25, 2013 Cross Motion establish any contract with the United States, or that any federal entity violated a constitutional provision or federal statute. Gov't Reply at 6. Neither Plaintiff nor the Trust was a party to any of the claimed land patents referenced to establish jurisdiction. Gov't Reply at 5-6. And, the two letters sent to President Obama do not establish jurisdiction because they are not contracts with the United States. Gov't Reply at 6.

In the alternative, the Government asserts that the November 13, 2012 Complaint fails to state a claim upon which relief can be granted, because the majority of Plaintiff's claims were mere legal conclusions, and the court does not have jurisdiction over the allegations that remain. Gov't Mot. at 11-13.

### 2.    The Plaintiff's Response.

Plaintiff seeks a judgment granting the Trust possession of the land and "costs" in the amount of $10,730,000. Pl. Resp. at 2-3. Plaintiff's right to $10,730,000 was "conclusively established administratively" by the failure of the United States to respond to two letters sent to it. Pl. Resp. at 2-3; *see* Pl. Resp., Exhibit A (copies of letters addressed to President Barack Obama c/o Eric Holder, stating that the United States is liable for $10,730,000 in damages for its role in abrogating the obligation of land patents and sustaining ongoing racketeering activity in connection with the land).

The March 25, 2013 Cross Motion "specifically invokes the First, Seventh and Ninth Articles of Amendment to the Constitution while invoking the organic law." Pl. Resp. at 9; Pl. Reply at 5. In addition, Plaintiff asserts that the patents are binding contracts. Pl. Reply at 8. The March 25, 2013 Cross Motion also raises a takings claim for the first time, stating that "[t]he defendant has unlawfully taken land from River Valley Family Trust for public use without paying a just compensation therefor." Pl. Resp. at 12.

Plaintiff lists "the 'gold and silver coin' clause" (art. I, § 10, cl. 1) as a money-mandating constitutional provision, but does not make clear how it relates to his case. Pl. Reply at 5; *see also* Exhibit 1 at 3 (documenting the history of title for the land). Because the federal district judge who dismissed Plaintiff's case in the United States District Court for the Northern District of Iowa is paid by the Government, there is a basis for jurisdiction. Pl. Reply at 7. Plaintiff further asserts that the State of Iowa is an instrumentality of the Government for the purpose of 28 U.S.C. § 1491, and therefore the Government has denied the Plaintiff his Seventh Amendment rights. Pl. Reply at 7-8. Plaintiff also contends that the United States District Court abrogated Plaintiff's Action for Ejectment and unlawfully "re-examine[d facts tried by a jury]

4

other than according to the rules of the common law," in violation of the Seventh Amendment. Pl. Reply at 7.

### 3. The Court's Resolution.

Plaintiff's pleadings can be read to assert jurisdiction on the basis of various acts of Congress, alleged contracts, and constitutional violations. Each of these is considered in turn.

#### i. The United States Court Of Federal Claims Does Not Have Jurisdiction To Adjudicate Claims Against A Federal District Court Judge.

Despite Plaintiff's claims to the contrary (Compl. ¶¶ III.9-10.), the United States citizenship of the members of the Iowa courts does not extend to this court jurisdiction over Plaintiff's claims against the United States. Plaintiff's dispute with the United States District Court for the Northern District of Iowa is not adjudicable in the United States Court of Federal Claims, and in any event, is not a contractual relationship. The decisions of a Federal District Court Judge in denying Plaintiff's claims cannot create a claim over which the United States Court of Federal Claims has jurisdiction. *See Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997) ("The Tucker Act grants the Court of Federal Claims jurisdiction over suits against the United States, not against individual federal officials.").

#### ii. Acts Of Congress Have Not Established A Contract Between Plaintiff And The United States.

The unspecified "Acts of Congress" to which Plaintiff refers (Pl. Reply at 2) do not create contracts allowing for a right of action against the Government. Legislation providing for the sale of federal lands merely authorized those sales to private citizens, and set their terms. *See, e.g.*, Act of April 24, 1820, ch. 51, 3 Stat. 566. Although there was a contractual relationship involving the United States and the original patent grantee, there is no current contractual relationship or dispute between the United States and Plaintiff. *See* Exhibit 2 at 3 (showing that all land at issue was sold to, and remains under the ownership of, private parties). The United States Court of Federal Claims, therefore, does not have jurisdiction to adjudicate claims on these land patents.

#### iii. A Fifth Amendment Taking Has Not Occurred.

The Tucker Act confers jurisdiction on the United States Court of Federal Claims in takings cases. *See* 28 U.S.C. § 1491(a)(1) (providing jurisdiction for "any claim against the United States founded . . . upon the Constitution"); *see also Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1362 ("[The Tucker Act] includes on its face all takings claims against the United States."). The November 13, 2012 Complaint, however, does not allege a takings claim, and even considering the allegation in the responsive brief, Plaintiff does not suggest any federal involvement with the land at issue. *See* Pl. Resp. at 12. Plaintiff argues only that private citizens and the State of Iowa were involved in the "taking" of his property. *See* Pl. Resp. at 12. As such, Plaintiff misstates the Government's role. *See* Pl. Resp. at 12 ("The defendant has unlawfully taken land from River Valley Family Trust for public use without paying a just compensation therefor."). Under certain circumstances, a private citizen may have a takings

claim against a state. *See Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897) (incorporating eminent domain under the Fourteenth Amendment). The United States Court of Federal Claims, however, only has jurisdiction over takings claims against the federal government.

### iv. None Of Plaintiff's Constitutional Claims Provide A Money-Mandating Source Of Law.

Plaintiff "invokes" the First Amendment, but does not expand on its applicability. Pl. Resp. at 9. The First Amendment, however, does not create a right to money damages. *See* U.S. CONST. amend I; *United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983) ("[T]he literal terms of the first amendment neither explicitly nor implicitly obligate the federal government to pay damages."). Therefore, it cannot serve as a basis for jurisdiction in the United States Court of Federal Claims. *See Mitchell*, 463 U.S. at 216 (1983) (holding that the claim must be one for money damages against the United States to be "cognizable under the Tucker Act").

The March 25, 2013 Cross Motion alleges a violation of Article 1, Section 10 of the United States Constitution, with references to the Contracts Clause and the "gold and silver coin clause." *See* U.S. CONST. art. 1, § 10, cl. 1; Pl. Resp. ¶ III.28. These constitutional provisions, however, place limits on the states, but do not create any money-mandating rights vis-à-vis the United States. *See, e.g., Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 476 U.S. 717, 732 & n.9 (1984) ("It could not justifiably be claimed that the Contract Clause applies . . . to actions of the National Government.").

Next, Plaintiff argues there has been an abridgement of his Seventh Amendment rights. *See* Pl. Reply at 8 (stating that United States District Court Judge Linda Reade "abrogated the authority of Amendment VII"). The court recognizes that the Seventh Amendment provides the right to a trial by jury in certain cases where damages can be awarded. *See generally Feltner v. Columbia Pictures Television*, 523 U.S. 340, 346 (1998) (recognizing right to a jury trial in copyright infringement suits). But the Seventh Amendment does not provide a right of action to recover damages from the United States where a jury verdict is overturned. *See* U.S. CONST. amend. VII; *Jan's Helicopter Serv. Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008) (holding that jurisdiction in the United States Court of Federal Claims requires a money-mandating source for the claim). Since the Seventh Amendment does not contain a money-mandating provision, it cannot serve as a basis for jurisdiction in the United States Court of Federal Claims. *See Fisher*, 402 F.3d at 1174 (requiring a "fair inference" that there is a money-mandating jurisdictional basis).

Plaintiff also argues that the Ninth Amendment is applicable, but does not explain why. Pl. Resp. at 9. The Ninth Amendment states that, "[t]he enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people." U.S. CONST. amend. IX. The Amendment contains no money-mandating provision, and therefore cannot serve as a basis for jurisdiction. *See, e.g., Fry v. United States*, 72 Fed. Cl. 500, 508 (2006) (holding that the Ninth Amendment does not create jurisdiction in the United States Court of Federal Claims).

## III. CONCLUSION.

In sum, Plaintiff has not identified "a separate source of substantive law that creates the right to money damages." *Fisher*, 402 F.3d at 1172. Plaintiff's land dispute was brought in the United States District Court for the Northern District of Iowa and dismissed. Plaintiff has no dispute with the United States and the court does not have jurisdiction to adjudicate Plaintiff's claims. Therefore, the court has no occasion to consider the adequacy of Plaintiff's pleadings under RCFC 12(b)(6).

For these reasons, the Government's February 25, 2013 Motion To Dismiss is granted. *See* RCFC 12(b)(1). Accordingly, the Clerk is directed to dismiss the November 13, 2012 Complaint.

**IT IS SO ORDERED.**

SUSAN G. BRADEN
Judge